Good morning. May it please the Court. My name is Jennifer Malio. I represent the Sauk-Suiattle Indian Tribe. Appellant would request five minutes be reserved for rebuttal. Please watch the clock. Thank you. This case concerns Sauk-Suiattle's right to fish in the Skagit River. This Court applies a two-pronged test for clarification sub-proceedings to determine whether Judge Bolt intended to exclude disputed waters from a tribe's UNA. In my argument... Counsel, would you address findings of fact 131 and 148 and how you think they do or do not bear on your argument? Certainly. Finding of fact 131 is the paragraph where Judge Bolt discussed the UNA for the Sauk-Suiattle Tribe. And Judge Bolt actually had four findings of fact related to Sauk-Suiattle. So they were 129 through 132. And at the District Court level, the District Court focused on finding of fact 131. But on the prong of ambiguity, we really need to look at all of the findings of fact. And finding of fact 129 talks about how there's a village at the Skagit River that belongs to the Sauk-Suiattle. It talks about how the tribe lived up and down the Skagit River. And then you do have finding of fact 131, which talks about the rivers in the Sauk-Suiattle's UNA, but does not name the Skagit River. It names the Cascade River, and it names the Sauk River. And those two rivers both flow into the Skagit River. And in fact, the Cascade River flows into it to the northeast of where the Sauk River flows into the Skagit. And the only connection between those two, the only waterway connection between those two, is the Skagit River. And I'm sorry, Your Honor, but I do not have 148 in front of me. Which refers to including the Upper Skagit Tribe? The Upper Skagit's UNA? Yes. And I think what Your Honor is getting at is the notion of how the Judge Bolt did not include the Skagit River in finding of fact 131. Now, it's not mentioned in there. It's neither specifically excluded or included. And the Sauk-Suiattle would submit that this is what creates the ambiguity under prong one for the test, the Muckleshoot test, which is, asks you to look at both the finding of fact itself, as well as the facts in the record before Judge Bolt. And so, if you look again at finding of fact 129, we have the village on the Skagit. So, Judge Bolt talks about the Skagit River. He talks about it in 129. He talks about it twice in finding of fact 129. And he also alludes to it in finding of fact 132, where he talks about how the Sauk-Suiattle tribe traveled to the saltwater. And the only direct water connection the tribe would have to the saltwater it would be over the Skagit River. So, it struck me in reading your argument that you had a number of persuasive arguments, but they seem to go more to the, I think it's 25A6. It's like we have evidence, there is evidence in the record, there's persuasive evidence of Sauk use of the Satch. That could change the, that was UNA, that could change the decree. But not that the decree itself says that. So, I'm wondering, is this more of a 25A6 type argument than a 25A1 type argument? Well, I believe it's a 25A1 argument, Your Honor. And that's because 25A1 in the case law that this court has had interpreting it, talks about looking at the facts and the evidence before Judge Bolt. So, the record before Judge Bolt, specifically. But the ultimate inquiry in an A1 case is, was the issue resolved by that decree, correct? Yes, but the method that this court has developed in interpreting the Judge Bolt's decree is to look at this two-pronged test of whether there was ambiguity. And then, and this court has mentioned that that test has somewhat collapsed into a single prong because of the fact that in looking at ambiguity, this court has talked about, well, you have to look whether the court, whether Judge Bolt meant something other than the apparent meaning of the text. So, you're looking beyond. So, both of those are inquiries to, is it resolved by this decree? Because if it's not resolved by the decree, then it's a potential A6 issue. And you may have a factual basis here for an A6 proceeding that would then resolve the claim. But the issue in front of us, because this is just an A1 case, is, was it resolved by the four corners of this decree using these tools we have from our case law? Right. And if you, the case law talks about, you can infer an intent from Judge Bolt to include or to exclude something based on the record evidence. And so, here, there's ample record evidence that the tribe lived, fished, and traveled on the Skagit River. And so, looking at that evidence, this is like the cases in Tulalip, the 2015 Tulalip case, or the Lamy 2017 case, where we're talking about, there's a geographic anchor that has been omitted from the UNA description. And you can still infer the intent to include that geographic anchor based on Judge Bolt's findings and the record in front of him. And the way you infer that under this case law is by looking at natural routes of travel. So, here we have... In those cases that you referenced with the geographic anchors, they were more along the lines of, they fished everywhere from so-and-so on the north to such-and-such on the south. And so, the question is, well, what is included? They didn't fish at every single space between the north and the south. And so, and we looked at travel routes and the like. But here, he didn't include the Skagit River, even though he included Skagit River in the UNA of the Upper Skagit in finding of Facts 148. And in other cases, he would include tributaries and the river, the main river. And here, he did not, notwithstanding that he cited that testimony from Anik, who references the Skagit River. So, it's very hard not to read that and infer that he did not intend to include the Skagit River. So, it's hard to see the ambiguity that you're arguing for. I see arguments from the text, from the record, for a 25A6 type case. But it's very hard to see that in a 25A1. Well, and then 25A6 would also allow the introduction of new evidence. But we feel there's evidence in this record that supports that determination. And so... Because we're looking at Judge Bolt's intent, not just supporting a determination generally, it's did Judge Bolt intend to include that as a UNA? And that's what I'm struggling with. Well, and I think that the, and you get to the point of the tributaries. But when you look at what Judge Bolt included, and you have these two rivers that flow into the Skagit River, but no real method of connecting between them, except over the Skagit River. In those times, and we have evidence from Dr. Lane that the forest between there was impenetrable, that the Indians did not frequent the woods. And she talks about that in ER 110 through 111 and ER 90 through 93. She talks about how they use this river as their route of travel. And it's... So it's almost as though Judge Bolt, and again, we would say this is ambiguous, but Judge Bolt included these two geographic anchors that are on this river. And the only route of travel between these two areas of UNA is the river. And then was more because it was maybe obvious that the river was included. And then listed the tributaries, which would have been much less obvious because they would be off the main river system. And moving to prong two. Upper Skagit under prong two had the burden to show that there is no evidence that the Sauk fished or traveled on the river. And they failed to meet this burden. In fact, there is ample evidence in the record, aside from Judge Bolt's findings of fact, that talk about the Skagit River itself. There is record evidence. There's the natural route of travel that I've talked about already. But there's also the finding of fact 129 and the record evidence that they lived at the confluence of the Skagit River and the Sauk River. So it's logical to conclude that if they were fishing on one river and they lived at the corner of two, they were fishing on both. And you can also conclude that from Dr. Lane's testimony, where she talks about in ER 92, that the tribes located their villages along waterways so that they would have access to the and that's at ER 71. And Judge Bolt cited that specifically in finding a fact 131, which again creates ambiguity. Why would he cite to finding a fact to ER 71? And then not means which talks about the tribe living up and down the Skagit River and fishing wherever they lived. Why would he cite to that if he wasn't intending to include the Skagit River in that UNA? And then there's also further testimony from Mr. Ennick at ER 77, where he talks about how the Sauk fished the whole Skagit River. And then before Judge Bolt, there was also a Senate report UPS 2, which was in the was a traditional life where they relied on the river as their main food source, which was salmon. And so their life revolved around the Skagit River. And then we also have the evidence in the record that the Skagit River was important for them to travel. And so you have Dr. Lane again talking about how the forest made the woods impenetrable, the deep forest, and how the Indians did not frequent the forest, that it was silent and trackless, according to early settlers, and that they located villages near the waterways so they could use them as points of access. And you have other evidence in the record that at 90 through 93 that talks about how the tribe could not reach the coast in winter times, and that was because the river was frozen. And so Dr. Lane talks about how in order to get to the reservation, the tribes needed to wait until the weather opened up the river. Looking at all of this evidence, the upper Skagit could not meet its burden to show that there was no evidence. So an analysis under prong two shows that there's ample evidence the tribe fished, lived, and traveled on the Skagit River, which is what the case law requires. Moving to prong one, appellant would submit that the differences between the findings of fact, between finding of fact 129 and finding of fact 132, as opposed to what's included in finding of fact 131, and the fact that there's the citation in finding of fact 131 to Mr. Ennick's testimony, which talks about the Skagit River. All of these mentions of the Skagit River reflect an intent to include the river in the UNA, and at very least creates ambiguity as to what Judge Bolt's intent was. And so the Soxhawatta would submit that we have, that the Muckleshoot three-prong test has been satisfied, and that the lower court improperly entered summary judgment in favor of the upper Skagit, and that that decision should be reversed. If there's no further questions, I'll reserve the rest of my time for rebuttal. Thank you. May it please the court, David Hawkins, General Counsel for Upper Skagit. With me today is our This morning I will devote my time to the following two issues. Soxhawatta's appellate counsel failure to comply with law of the case, and two, waiver. Soxhawatta's submission of a claim of UNA in the Skagit River for the first time on appeal. Before I get to the legal arguments, however, it should be noted that if Soxhawatta had properly brought its claim for UNA in the Skagit, as you were discussing, Your Honor, in accordance with requirements of paragraph 25A and B, which it did not, I believe it would be the first rivering UNA to be evaluated accordingly. And for good reason, as UNAs that are limited to rivers are within land masses with easily defined meets and bounds, such as riverbanks, causing rivers to have clearly defined beginning and end points, in contrast to marine waters, which have few geographically identifiable anchor points. As Judge Craig noted in 1985, there are greater difficulties in specifying or delineating marine areas used by one or another Indian group than is the case with river areas. That's at 626 F SUP 14, I'm sorry, 1528. In the Muckleshoot, Upper Skagit, and Lummi cases, all of the moving parties sought to prove that despite using broad language, Judge Bolt did not intend to include a particular portion of an identified area within the broad marine areas. In other words, they sought to limit a broad area, as opposed to this case where Sauk is trying to expand its narrowly tailored UNA. Upper Skagit initiated the underlying sub-proceeding by invoking the district court's continuing jurisdiction in accord with paragraph 25A1. It's often been referred to as an enforcement provision of the ongoing injunction. Asserting Sauk's regulation, expanding its UNA to the Skagit River, was a violation of decision one. Procedurally, Upper Skagit complied with paragraph 25B7 because Sauk's illegal regulation caused the emergency of immediate irreparable harm to its that Upper Skagit failed to comply with the procedural requirements of paragraph 25B. Judge Martinez' decision correctly rejected that argument, affirming Sauk's misunderstanding. Incredibly, however, Sauk continues to demonstrate its failure to understand and comply with case precedent and relying upon Upper Skagit's proper invocation of jurisdiction pursuant to paragraph 25A1 to present a new claim of UNA in the Skagit River. I do not think that there has ever been a tribe who, on appeal, has brought a claim for UNA. Abandoning the procedural requirements of paragraph 25B, the very requirements it incorrectly asserted to the district court barred Upper Skagit's underlying action. Sauk's assertion that it has UNA in the Skagit River, a claim that bears no resemblance to issue litigated below, that being where the boundary line is between the Skagit and the Cascade River, is made even though Sauk has never fished in the Skagit River since the issuance of final decision one, without an invitation from Swinomish and Upper Skagit, and has never advanced such a claim or argument at the trial court or in any other legal proceeding over the past 50 years. In addition to Sauk's failure to properly invoke the continuing jurisdiction requirements of paragraph 25, it has similarly misapplied the substantive law of the case. Although Sauk is procedurally barred from even presenting these up these arguments, Upper Skagit will address them in an abundance of caution. Sauk attempts to sidestep Judge Martinez by ignoring his well-reasoned decision below, and improperly presenting a new argument to this panel, continue Sauk's disregard of the district court's authority. Most notably, it's Stiligwamish ruling of 1978, which clearly barred Sauk's effort at self-help. In that sub proceeding, the Tulalip tribes, just as Upper Skagit did here, were forced to bring a request for determination to defend its UNA from the incursion of the Stiligwamish, which attempted to expand its clear and limited riverine UNA through the issuance of a fishing regulation. In that case, the court specifically gave notice to all of the tribes of the consequences of failing to adhere to its orders. When it stated, the court has been made aware that other treaty tribes have sought to expand their usual and accustomed fishing places, not in accord with the procedures of paragraph 25, but by filing fishing regulations, merely including such additional places, exactly what Sauk did here. The court goes on, such conducts evidences a disregard for the court's rulings and procedural guidelines meticulously set forth in final decision one. Those tribes or with final decision one are admonished to follow its provisions or risk the imposition of sanctions. You can find that at 459 F SUP 1068. So if I understand what you're saying, your argument is that the Sauk should not have issued their regulations allowing fishing in the Skagit, and and therefore what the district court could sanction them. But the district court went on to decide whether their fishing in that area was in conformity with the bold decree, right? So where does that, how does that affect us? Your Honor, I would respectfully disagree. The lower court found that their fishing in the area that they subsequently opened, the second regulation was in violation of the UNA that Sauk has. Right, so but the district court grappled with the bold decree and the determination whether the the Sauk's fishing in the Skagit was within the decree or not. At least that was my reading of the of the opinion. Is that, do you disagree with that? Our read of Judge Martinez's decision is that he has clearly stated that the Skagit is omitted from the Sauk's UNA, and therefore any regulations that are issued opening the Skagit by Sauk are a violation of Final Decision One. Right, but he did that by analyzing the decree and the UNA's, which is what they're asking us to do. So I guess I'm I'm not understanding why you're you're saying they waived it or that is somehow inappropriate on appeal. Because they failed to bring it below, Your Honor, and waiver. Bring what below? I mean because that's what the district court was was trying to analyze. Your Honor, the district court did address their UNA, but they didn't, but Sauk's claim below was one, that upper Skagit procedurally was barred from bringing the action because it didn't comply with paragraph 25B whatever. Which the court rejected. That's right, and two, that the waters where they fished could be considered part of their UNA. Right, which is what they're saying here. It is not what they're saying here. How so? Because counsel below was very specific as to where he described the areas at issue. What counsel here is saying is they have UNA in the entirety of the Skagit River. They do not delineate between the Cascade and the Sauk. They simply say we have Skagit River UNA. So what you're saying is they were specific about the areas in the Skagit River that were within their UNA before the district court, and here they're making a much broader claim. Is that what you're saying? That is correct, Your Honor. Thank you. Your Honor, I'd like to address, because you brought up the issue of evidence and this conflict between the evidence that they allegedly believe is relevant versus what the precedent stands for. In an effort to rewrite the law of the case to expand its UNA, Sauk now asserts it has the right to pull any evidence from the specific UNA finding, to create ambiguity that does not exist, and to spring from that false premise to argue that Muckleshoot, Lummi, and Upper Skagit permit a review of the entirety of Final Decision 1 to ascertain Judge Bolt's intent. Surprisingly, Sauk correctly stated below, but should be determined by the evidence he cited, which is finite and complete. You can find that in the record at SER 52. The evidence at issue is the evidence cited by Judge Bolt in the paragraph wherein he finds Sauk UNA. The first, USA 29 at page 13, is Dr. Barbara Lane's report, specific as to if she forecloses any reference to Sauk having UNA in the Skagit River. There is no reference... You made the comment two pages earlier in Dr. Lane's report where it says, in similar fashion, some of the Sauk people went to the Cascades on the Skagit River to fish and to Baker River to fish with Upper Skagit friends and relatives there. That is correct, Your Honor, and that language talks about the Sauk fishing with the Upper Skagit. Oftentimes, as I referenced previously in my argument, one tribe will invite another tribe to fish in their territory. That's an example of what Upper Skagit would do in that instance. They were fishing with Upper Skagit, not independently at the Baker River. And the Cascade is the reference which is in their UNA. So we've addressed Barbara Lane and her report. The second, MS 10, lines 1 through 6, is also telling. It reveals that Judge Bolt was unquestionably aware of this testimony, that he took this testimony into account, and yet having done so, determined that Sauk had no UNA in the river. It's as though we're trying to prove a negative here when they say, well, there's all this information, but he didn't include it, so you have to prove why he didn't include it. The assumption works the other way. The assumption is that Judge Bolt took his time. He was meticulous. He reviewed all of this information and then determined the UNA, not the opposite. Sauk tries to argue that Dr. Lane's general report as to all treaty tribes contains statement and conflict with her specific report regarding Sauk to invoke Upper Skagit and Muckleshoot. That argument fails, as this court has previously found it is the specific, rather than the general evidence presented by Dr. Lane, that Judge Bolt relied upon to support his UNA determinations. In response to their argument that he, in paragraph 131, he identifies two rivers that don't flow into each other, and this, you know, section that they're claiming is the piece that connects them, and if he included the two pieces, it has to include the piece between them. Your Honor, I think that's a manufactured argument for convenience based on a previous case dealing with marine areas, and the difference, again, between marine areas and rivers is telling here, because in the marine area case that they're referring to, they refer to this body of water admiralty inlet, and that it's somehow in between two areas that are described in the UNA, and but it was based on the ambiguity of the language, Northern Puget Sound, environs of Seattle. Here, you don't have that ambiguity. You clearly have defined bodies of water, and the concept that they may have gone in, or there's some logical reason for them to do that, one could argue just the opposite based on the testimony that Judge Bolt relied upon, not the section that he cited, but if you look through the testimony of that affiant, he speaks to how they fished, and he specifically references them using traps and set nets. He doesn't talk about them drifting, so if you're going to rely upon that affidavit or that testimony for one purpose, then it should be given weight for another, and that would indicate that they did not drift the river into the Skagit, go down to the other river, and it just, it doesn't make sense logically. Judge Martinez got it right. And while this panel is vested with the novel jurisdiction, Ninth Circuit precedent typically gives deference to the district court's interpretation based on the court's extensive oversight of the decree. From the commencement of the litigation to the current appeal, Judge Martinez has sit on this case longer than any other judge, and the idea that he misconstrued the relevant evidence here is just plain false. SOC should not be allowed to abandon its arguments below to present an unprecedented and procedurally defective argument to the panel. Like every other tribe, SOC may seek to expand its UNA by complying with the procedural requirements of paragraphs 25A and B of final decision one. It does not have the ability to unilaterally file a regulation expanding its UNA by ignoring the ongoing authority of the court over treaty rights and issues. That is exactly the behavior the court warned against in the Stela Gwamis case of 1978. Judge Martinez did not misapprehend any portion of this sub proceeding or the importance of the relevant evidence at issue. Judge Martinez weighed the specific evidence that Judge Bolt cited as his basis for signing SOC's UNA to be limited to the three rivers and nine streams described and correctly found, SOC has no UNA in the Skagit River. His decision should be affirmed. Now as to waiver, SOC's new arguments are barred by waiver, and as stated previously, the panel need not even consider the new argument. As this circuit has consistently held, the court will not consider arguments raised for the first time on appeal except when limited exceptions apply. And could you define the new argument for us specifically? The new argument is that they are now asserting they have UNA in the Skagit River. They did not assert that below. That was not their argument. The argument below by their counsel, who was very careful to work within the confines of what he believed he was obligated to argue, the existing UNA of SOC, which had no mention of the Skagit, argued that they were in the confluence of the rivers. That was his argument. Not that they had UNA in the Skagit. That they had UNA in the confluence? If you closely look at his argument, that's what he describes. He describes that it's in this area that the confluence is yet to be clarified. Where's the beginning and end of these rivers? Essentially is what he's trying to suggest. Okay. The exceptions to allowing a new claim to be brought for the first time on appeal are not met. First, exceptional circumstances. SOC has failed to assert any exceptional circumstances precluded it from making this brand new claim below because there aren't any. Change in the law. SOC has identified no change in the applicable law. By your first, if we can just go back to your first waiver argument, because I'm just looking at the conclusion of the summary judgment order. I mean, didn't the district court resolve the question of whether or not they had UNA in the Skagit? That is our position, Your Honor. But they now come before this panel and say, we have UNA in the Skagit, and therefore, you should hear our claim. So, I don't know. I've never seen that happen before, but that's where we are. The second exception. So, I'm just looking at the order. It says, the requesting party initiated this sub proceeding to determine whether certain fishing in the Skagit River complies with Judge Bolt's decree. And that, and so, is your position that it's limited, that this case is limited to the fishing areas described in their regulation? That is correct, Your Honor. Because it's the issuance of the regulation that's in violation of Final Decision 1, because there are regulations that are outside of their established UNA. But the conclusion of your own summary judgment motion asks the court for an order declaring that SOC has no adjudicated UNA in the Skagit River. And that is because, Your Honor, by issuing the regulation that allowed fishing in the Skagit, we had to have a declaration from the court in joining them from doing so. But, you asked, it's like a deck relief action where you sort of flip the plaintiff and the defendant. You asked for a determination that they had no UNA in the Skagit River, and then you can't say that the issue of whether or not there's a UNA in the Skagit River is not properly asserted in the district. Or you put it in, you asked for a determination of it. How can you say it's waived? Your Honor, because that was our request, not what they provided for below. They had an obligation to present that below. Our request was that there was no UNA in the Skagit as it pertained to the regulation at issue. I see I'm out of time. Do you have any other questions? Thank you, Your Honor. Okay, thank you. Can you start by addressing this waiver argument? Yes, Your Honor. As the panel has stated, at the district court below, first backing up one step, if I may, this case came to the district court in the manner that many cases of these type come to the district court. And that is a fishing regulation is passed by a tribe that maintains their UNA includes a certain area. And another tribe disputes that, that becomes the disputed waters. And the tribe that disputes it opens a clarification sub-proceeding under 25A1 to determine if there's a violation of the continuing injunction from the fishing regulation. And that's how many cases have come. Muckleshoot 3, the Lummi 2000 case, the Upper Skagit 2015 case. And there's more to list, but I won't go through all of them. But, so that's how this case came to be. And then, as you correctly stated, in the proceedings below, the claim was made that there was a violation of the continuing injunction via the regulation. And the analysis to determine whether that occurred required the court to look at whether Judge Bolt intended to exclude the Skagit River from the Sauk's UNA. And so that analysis necessarily involved looking at the Skagit River and how it related to Sauk's UNA. And Judge Martinez below undertook that analysis. He undertook the Muckleshoot analysis. So he looked at ambiguity, he looked at evidence of the record, and he made his determination. And there's, in fact, his subheading in his order. He actually states Sauk's UNA had no UNA in the Skagit River. I mean, he definitely undertook that analysis. And what the waiver case law of this circuit says is that a party can waive claims, but it can't waive arguments. And so here, it's very clear that the claims and the analysis was exactly what Muckleshoot 3 required, and that covered all of these issues. Now, a party may refine its arguments on appeal, and that's what's happened here. The Sauk's UNA has refined its arguments. It's argued additional case law. It's argued additional record evidence. But it never waived those claims. And those claims were thoroughly analyzed by the court below. Moving to another point raised by Upper Skagit, and that is the issue of why the Sauk Suatl has issued this fishing regulation at this point in time. And it's true that since 1974, the tribes have been able to reach agreement as to Sauk's participation in fishing on the Skagit River. And over time, that participation has been decreased. And to the point where the Sauk, who always thought they could work through this by agreement, work through this issue by agreement, but has always maintained UNA in the Skagit River, it's always been able to fish in the Skagit River by agreement. But over time, as that catch diminished, the Sauk felt that it needed to assert its UNA. And which leads to the focus of many questions here today, and that is, you know, the specific omission of the Skagit River from that UNA paragraph and what that means. But looking at other cases this court has considered, there were many times when a UNA left out a specific location. And, for example, in Muckleshoot 3, this court looked at it and said, well, we certainly know that Judge Bolt was aware of Elliott Bay, but he didn't list it in the UNA. Can you address the distinction opposing counsel makes between the marine waters cases and the specific river, which are bound by the geographical features? Certainly, certainly. And I think that, in actuality, because rivers are much more finite than these larger marine waters, that it lends itself to an easier analysis under the case law. And that's because here there is one route of connection between the UNA. There is simply the Skagit River. That is the connection between the Cascade River and the Sauk River. And in the marine waters cases, we're talking about a much larger saltwater body where there could be multiple routes. And so the court was trying to determine what route would be the natural route. Do we have a case where we found a travel route in a river situation as opposed to a marine waters? Not to my knowledge, Your Honor. I don't believe that that has come up, but I do believe it's analogous. And I mean, again, we're talking about essentially in the marine waters cases, we're talking about, well, how did this tribe get from one portion of where it fished to another portion of where it fished? And the court looked at that natural route. And here, how does this tribe get from one portion of where it fished, the Cascade River, to another portion where it fished? And that is, again, over the Skagit River. And then that's bolstered by further evidence of the fact that they lived and fished on the Skagit River. And then Appley also talked about how the Skagit only fished on the river by invitation and has only fished on the river by invitation. And aside from the fact that there's other evidence in the record, including evidence cited by Judge Bolt, which is the ennick testimony, that the tribe actually lived and fished on the Skagit River. There's also evidence of fishing based on kinship rights, so use rights. And Dr. Lane talked about this in her reports. And what she said is that in ER 115, that tribes had use rights based on kinship or marriage. And so we're talking about use rights, not permissive rights. And she says that in ER 124, some tribes had use rights based on family relations. And then she goes on to her next sentence and says, other tribes requested permission to fish. And so that she's juxtaposing when you have a use right to fish and when you have to ask permission to fish. And here she's saying when there's marital relations, kinship relations, that you'll have use rights to fish. And Judge Bolt noted that the tribes, in Finding a Fact 129, noted that the tribes had intermarried. And so he notes that there's this kinship relationship. And so under Dr. Lane's analysis, that would create these use rights. And I see that my time is ending. Based on the record evidence, the District Court erred in its determination of Judge Bolt's intent as to Soxhawattles' UNA. And its order granting summary judgment should be reversed. Thank you. Okay, we thank both sides for their argument. The case of Upper Skagit Indian Tribe versus Soxhawattle Indian Tribe is submitted.
judges: IKUTA, COLLINS, Fitzwater